**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **KENNETH HERTZ, Plaintiff,** | § | |
| **v.** | § | **A-25-CV-1739-RP** |
| **CAPITAL METROPOLITAN TRANSPORTATION AUTHORITY and KEOLIS TRANSIT SERVICES, LLC, Defendants.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant Keolis Transit Services, LLC's ("Keolis") Motion to Dismiss (Dkt. 9, Keolis Mot.), Defendant Capital Metropolitan Transportation Authority's ("CapMetro") Motion to Dismiss (Dkt. 11, CapMetro Mot.), Plaintiff Kenneth Hertz's Opposition to Defendants' Motion to Dismiss (Dkt. 13, Resp.), Keolis's Reply (Dkt. 14, Keolis Rep.), and CapMetro's Reply (Dkt. 15, CapMetro Rep.).[1] After considering the briefing and applicable law, the undersigned recommends the following to the District Judge.

## I. BACKGROUND[2]

Plaintiff Kenneth Hertz brings this action against Keolis and CapMetro, his alleged employers, complaining of discriminatory treatment, harassment, and retaliation in the workplace. Dkt. 1 (Compl.) ¶¶ 1-3. Hertz is a white male who alleges he has worked as a mechanic for his employer, CapMetro, and its operating partner, Keolis, for many years. *Id.* ¶¶ 1-2, 24.

[1] These motions were referred to the undersigned for report and recommendation by United States District Judge Robert Pitman pursuant to 28 U.S.C. § 636(b)(1), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders dated Apr. 21, 2026.

[2] At this stage of litigation, all well-pleaded facts are taken as true.

On February 6, 2025, Hertz reported to a supervisor that a coworker, Edger Ochoa, was sleeping on the job. *Id.* ¶¶ 5, 25. Ochoa, a Hispanic male, responded aggressively to Hertz's report and accused Hertz of threatening Ochoa's life. *Id.* Hertz and Ochoa reconciled without pressing charges or making statements against one another. *Id.* ¶ 6. However, Human Resources ("HR") required Hertz and others to submit written statements regarding the incident. *Id.* ¶ 25. On February 14, 2025, Hertz was suspended without pay pending a disciplinary hearing, but Ochoa was not. *Id.* ¶¶ 7, 26. On February 19, 2025, Hertz attended the disciplinary hearing but was denied access to the witness statements used against him. *Id.* ¶ 27. Defendants "failed to timely issue a decision, but ultimately reinstated" Hertz after forcing him to sign a "Last Chance Agreement" as a condition for returning to work. *Id.* Defendants denied Hertz any backpay, warned him that future infractions would result in immediate termination, and did not provide him with a copy of the Last Chance Agreement in a timely manner. *Id.* ¶¶ 8, 30.

Following these events, Hertz alleged he suffered delays in pay raises, the loss of work hours, statements that Hertz "got what he deserved" and "should have been fired" from supervisors and coworkers, and he received assignments outside of his regular job duties. *Id.* ¶ 11. Hertz alleged that similarly situated coworkers of different races "received lesser discipline for comparable or more serious conduct. For example, one employee accused of assaulting a manager received only a three-day suspension and prompt reinstatement." *Id.* ¶ 32.

On August 5, 2025, Hertz filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, retaliation, and hostile work environment. *Id.* ¶ 35. He received a Notice of Right to Sue on August 26, 2025. *Id.*

On August 13, 2025, Hertz filed a complaint against another co-worker, Jeorge Rodriguez. *Id.* ¶ 12. However, Hertz did not allege what prompted him to make this complaint, nor did he

allege what behavior of Rodriguez's he complained of. *See id.* Hertz alleged that HR failed to investigate or address the complaint. *Id.*

Hertz brings claims against CapMetro and Keolis for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), hostile work environment under Title VII and Chapter 21 of the Texas Labor Code, known as the Texas Commission on Human Rights Act ("TCHRA"), and retaliation under Title VII. Compl. ¶¶ 36-64. Hertz seeks a declaratory judgment that Defendants violated Title VII by subjecting him to discrimination, retaliation, and a hostile work environment on the basis of race; an order awarding Hertz full equitable relief (including restoration of seniority, benefits, and correction of personnel records); an order awarding monetary relief (including back pay, front pay, lost benefits, and compensatory, consequential, and punitive damages); an injunction requiring Defendants to adopt policies and training to prevent future discrimination; and all other necessary relief. *Id.* at 11-12.

Defendants, filing separately, moved to dismiss Hertz's Complaint for failure to state a claim, and CapMetro made an additional argument that it did not employ Hertz.[3] *See* Dkt. 9 (Keolis Mot.); Dkt. 11 (CapMetro Mot.). Hertz filed one consolidated Response, Dkt. 13 (Resp.),[4] and Defendants again filed separate Replies, Dkt. 14, (Keolis Rep.); Dkt. 15 (CapMetro Rep.).

## II. LEGAL STANDARD

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be

[3] The court notes that Defendants share the same attorneys and, as their motions and briefing are substantially identical, instructs Defendants to consolidate any further briefing in this case that is similarly identical.

[4] Hertz's Response exceeds the page limit prescribed by the parties' Scheduling Order, Dkt. 22 ¶ 8, and the Local Rules, *see* Local Rule CV-7(d)(3). However, as Hertz consolidated his arguments into one Response, the court will consider the entire Response. In future, Hertz shall confine himself to the page limit or seek leave to exceed it.

taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. In sum, a "plaintiff must plead enough facts to nudge the claims across the line from conceivable to

plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (internal quotation marks, brackets, and ellipses omitted) (quoting *Iqbal*, 556 U.S. at 680).

When evaluating a motion to dismiss, the court considers "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The court may also consider "'documents that a defendant attaches to a motion to dismiss. . . if they are referred to in the plaintiff's complaint and are central to her claim.'" *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 297 (5th Cir. 2023) (quoting *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016)).

## III. ANALYSIS

Hertz brings claims under Title VII, Section 1981, and the TCHRA. Title VII permits employees to sue their employers for discriminatory employment actions. *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). Section 1981 guarantees that all persons in the United States have equal contractual rights as white citizens and proscribes race discrimination of this variety. 42 U.S.C. § 1981(a); *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 344 (5th Cir. 1981). Finally, Chapter 21 of the Texas Labor Code, or the TCHRA, is modeled after Title VII. *See* TEX. LAB. CODE § 21.001(1) (stating that a purpose of Chapter 21 is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments"). To bring a claim under Title VII or the TCHRA, a plaintiff must file a charge of discrimination ("Charge") with the EEOC or the Texas Workforce Commission within 180 days of the alleged unlawful employment action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004). While Title VII allows for an extension of this deadline, the TCHRA does not, absent special circumstances not present in this case. *See* TEX. LABOR CODE § 21.202(a). As a preliminary matter, the

undersigned finds that Hertz has alleged he filed a Charge with the EEOC within 180 days of the alleged unlawful employment action, and he filed his Complaint within 90 days of receiving his Notice of Right to Sue. Compl. ¶ 35.

The undersigned begins his analysis by addressing whether Hertz plausibly alleged CapMetro is his employer. The undersigned will then address each of Hertz's claims in turn.

**A. Improper Defendant**

Hertz alleged that CapMetro has employed him for many years, that CapMetro contracted with Keolis in 2024, and that CapMetro and Keolis directed Hertz's suspension, return to work, and disciplinary hearing and investigation. *See* Compl. CapMetro argues that, at all times pertinent to his claims, Hertz was employed by Keolis. CapMetro Mot. at 3. CapMetro asserts that it entered into a three-year contract with Keolis in January of 2024 and that Hertz's allegations involve events that occurred after February 2025—squarely during Keolis's contract. *Id.* at 4. Hertz argues that CapMetro had control over bus operations during the relevant period and that several questions of fact exist that should not be decided at the Rule 12 stage. Resp. at 19-20.

To survive a motion to dismiss, a Title VII plaintiff must "plausibly allege" that there is an employment relationship between the plaintiff and defendant. *Brown v. City of Anna City Hall*, No. 4:22-CV-00571-ALM-CAN, 2023 WL 2583976, at *3 (E.D. Tex. Feb. 22, 2023), *R. & R. adopted*, 2023 WL 2574022 (E.D. Tex. Mar. 20, 2023). To determine an employer-employee relationship under Title VII, there is a two-step process: (1) determining whether the defendant falls within the statutory definition of an employer, and (2) determining whether an employment relationship exists between the plaintiff and defendant. *Muhammad v. Dallas Cnty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007). The Fifth Circuit uses the "hybrid economic realities/common law control test" to determine whether an employment relationship exists for the

purposes of Title VII claims. *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118-19 (5th Cir. 1993). This test focuses on whether the alleged employer has the right to hire and fire, supervise, and set the work schedule of the employee, as well as whether the alleged employer pays the employee's salary, provides benefits, and sets out the terms and conditions of employment. *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015). "The most important component of this test is '[t]he right to control [the] employee's conduct.'" *Muhammad*, 479 F.3d at 380 (quoting *Deal*, 5 F.3d at 119).

Hertz alleged that he has worked at CapMetro for years, Compl. ¶ 24, and in his Response, he clarified that he has held his position for 19 years, Resp. at 4. However, Keolis only began contracting with CapMetro in 2024. Compl. ¶ 2. Hertz further alleged that CapMetro subjected Hertz to a disciplinary hearing, denied him access to the witness statements used against him, forced him to sign a Last Chance Agreement as a condition for returning to work, and ignored harassment suffered by Hertz. *See id.* ¶¶ 6-13. While CapMetro argues that it did not employ Hertz during the relevant time period, CapMetro's argument consists of parroting Hertz's allegations that Keolis contracted with CapMetro in 2024 without making any showing that Keolis obtained control over Hertz's employment through said contract. CapMetro provided no support for its position; thus, its conclusory arguments are insufficient to overcome the presumption in favor of Hertz's well-pleaded facts at this stage. The undersigned finds that Hertz has alleged CapMetro supervised and set the terms and conditions of Hertz's employment. Accordingly, Hertz has plausibly alleged CapMetro was his employer at this stage of litigation. The undersigned recommends that the District Judge deny dismissal of CapMetro at this time.

**B. Race Discrimination**

Hertz's Counts I and IV are for race discrimination under Title VII and Section 1981, respectively. Hertz alleged he is a white man, and therefore, a member of a protected class. Compl. ¶ 37. Hertz alleged he is qualified for his position after years of experience and satisfactory performance and that he was suspended without pay, reinstated under worsened conditions, and denied benefits. *Id.* ¶¶ 38-42. Defendants argue Hertz failed to state a claim for race discrimination because he did not plausibly allege sufficient similarities to his comparators or that any adverse action was taken against him because he is white. CapMetro Mot. at 5-8. Although similar, the two statutes contain separate elements, thus the undersigned will address each claim separately.

*1. Count I: Title VII*

To survive a motion to dismiss on a discrimination claim under Title VII, a plaintiff must "plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make their case plausible." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (citation modified) (emphasis in original). "There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* [his] protected status." *Id.* at 767 (citation modified) (emphasis in original). "If a plaintiff's disparate treatment claim depends on circumstantial evidence, he will 'ultimately have to show' that he can satisfy the *McDonnell Douglas* framework. In such cases, we have said that it can be 'helpful to reference' that framework."[5] *Id.* (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470-71 (5th Cir. 2016)).

[5] If a plaintiff is relying on circumstantial evidence, he would ultimately have to show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group" under the *McDonnell Douglas* framework. *Ernst v. Methodist Hosp. System*, 1 F.4th 333, 339 (5th Cir. 2021) (citation modified); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

Hertz alleged he suffered an adverse employment action when he was suspended without pay and reinstated under worsened conditions. For the second element, Hertz did not allege direct evidence that Defendants took actions against Hertz because of his race. Accordingly, the undersigned analyzes Hertz's allegations with reference to the *McDonnell Douglas* framework. Hertz alleged the existence of similarly situated employees and specifically alleged the existence of two comparators. First, Hertz alleged that Ochoa, a Hispanic coworker, suffered fewer consequences for his part in their altercation. Second, Hertz alleged that an unidentified employee of a different, unspecified race received a three-day suspension after he was accused of assaulting a manager.

However, Hertz failed to allege that Ochoa's position within the organization was similarly situated to Hertz's own. Likewise, Hertz failed to allege the race of the unidentified employee and that employee's relative position within the company. Furthermore, Hertz alleged that Ochoa was accused of sleeping on the job and participating in a verbal altercation, the unidentified employee was accused of assault, and Hertz was accused of making a death threat. Hertz alleged that HR investigated every incident and suspended the unidentified employee for three days before reinstating him. Hertz does not affirmatively allege the length of his own suspension, but, like the unidentified employee, Hertz was reinstated to his position following HR's investigation.

The Fifth Circuit has noted that "scrutinizing whether [a plaintiff's] fellow employees were really 'similarly situated' . . . [is] more suited to the summary judgment phase." *Cicalese*, 924 F.3d at 768 (citation omitted). However, Hertz must plausibly allege facts going to the ultimate elements of his claim. Hertz has failed to allege the existence of a similarly situated employee, with similar accusations against him, who was treated more favorably than Hertz. Accordingly, Hertz has failed

to plausibly allege he suffered an adverse employment action *because of* his race. The undersigned recommends dismissal of this claim.

*2. Count IV: Section 1981*

The following elements must be met for a successful Section 1981 race discrimination claim: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994).

With respect to the second element, intentional discrimination, "the plaintiff may establish a *prima facie* case by direct evidence or, more commonly, by circumstantial evidence of discriminatory motive." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) (citation modified). Therefore, "an allegation that similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the section 1981 claim." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citation modified).

Hertz's allegations here suffer the same fatal defect as they did for race discrimination under Title VII. Hertz has failed to allege that Defendants intended to discriminate on the basis of race because he has failed to plausibly allege circumstantial evidence of discriminatory motive. Accordingly, the undersigned also recommends dismissal of Hertz's race discrimination claim under Section 1981.

**C. Count II: Hostile Work Environment**

Hertz alleged that Defendants created a hostile work environment under Title VII and the TCHRA by denying him access to paperwork, failing to address that Hertz's coworkers were spreading rumors that he "got what he deserved," assigning tasks outside of Hertz's job

description, and failing to act on Hertz's complaint to HR about Jeorge Rodriguez.[6] Compl. ¶¶ 48-53. Defendants argue Hertz failed to plausibly allege any connection to Hertz's race, that the harassment affected a term, condition, or privilege of Hertz's employment, and that Defendants knew or should have known of the alleged harassment. Keolis Mot. at 8; CapMetro Mot. at 9.

In order to establish a claim for a hostile work environment under Title VII, a plaintiff must establish that he was: (1) a member of a protected class; (2) subjected to unwelcome harassment; (3) the harassment was based upon the plaintiff's membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Jones v. Flagship Int'l*, 793 F.2d 714, 720-21 (5th Cir. 1986). The analysis of a hostile work environment claim is the same under the TCHRA as it is under Title VII. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.25 (Tex. 2010) (noting the TCHRA is modeled after Title VII and that "federal case law may be cited as authority in cases relating to the Texas Act" (quoting *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004))). A hostile work environment claim is properly dismissed when "allegations do not contain any connection, either explicit or implicit, between [plaintiff's] membership in a protected class and the alleged activity." *Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007) (per curiam). Additionally, the "[f]ailure to allege facts in the complaint that demonstrate a severe or pervasive work environment sufficient enough to alter the conditions of the victim's employment is fatal to a plaintiff's claim." *Alfred v. City of Austin*, No. 1:20-CV-1119-LY, 2021 WL 12301191, at *4 (W.D. Tex. Sep. 2, 2021).

First, Hertz failed to allege that the alleged harassment was sufficiently severe and pervasive to alter a term or condition of his employment. Regarding Hertz's allegations that he

[6] The undersigned notes that Hertz refers to Rodriguez as both a "coworker" and a "supervisor." Compl. ¶ 12, 53.

was denied access to paperwork or denied a raise, Hertz alleged only that he experienced delays in receiving his requested paperwork or raises. Furthermore, making disparaging comments such as Hertz "got what he deserved" is insufficient to allege severe and pervasive harassment. *See, e.g., Palomo v. Action Staffing Sols., Inc.*, No. SA-21-CV-01145-XR, 2023 WL 4356071, at *7 (W.D. Tex. July 5, 2023) ("For harassment to affect a term, condition or privilege of employment, the workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (citation modified). Hertz's minimal allegations do not rise to this level.

Moreover, none of Hertz's allegations connect the alleged harassment to Hertz's membership in a protected class. Hertz does not tie any of his allegations to his race; thus, he has failed to allege any facts that explicitly or implicitly connect the alleged harassment to his race. *See Abdulbaki v. Regent Care Ctr. of San Antonio II, Ltd. Partn.*, No. SA-11-CV-00211 OLG, 2012 WL 1076206, at *10 (W.D. Tex. Mar. 29, 2012) (finding a single comment referring to the plaintiff as a "terrorist" insufficient to affect the plaintiff's conditions of employment and state a claim for discrimination based on national origin and religion under Title VII). Unlike *Abdulbaki*, Hertz has not made even a single allegation to connect the alleged harassment to his race. Accordingly, the undersigned finds Hertz failed to plausibly allege a hostile work environment claim under Title VII and the TCHRA.

**D. Count III: Retaliation**

Hertz alleged Defendants retaliated against Hertz under Title VII for making internal reports of harassment and discrimination to HR and for filing a Charge with the EEOC. Compl. ¶¶ 55-58. Defendants argue Hertz only engaged in protected activity by filing an EEOC Charge,

which occurred after Hertz was suspended and reinstated in February 2025. CapMetro Mot. at 13. In their Replies, Defendants note that Hertz failed to refute their arguments regarding retaliation in his Response. *E.g.,* CapMetro Rep. at 7.

Title VII makes it an unlawful employment practice to "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3a. To bring a retaliation claim in the Fifth Circuit, a plaintiff has the initial burden to set forth a prima facie case of retaliation, which requires the plaintiff to plead that "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 407-08 (5th Cir. 2021) (quoting *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)). "[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC,* 332 F.3d 874, 883 (5th Cir. 2003).

Hertz alleged two instances of protected activity: (1) "reporting harassment and discrimination internally to Human Resources and Management" and (2) his August 5, 2025 filing of an EEOC Charge. Compl. ¶¶ 55-57. However, the only reports Hertz describes in his Complaint are against Ochoa for sleeping on the job and against Rodriguez for an unexplained reason. *See generally id.* Reporting Ochoa for sleeping at work did not involve opposing any protected activity under Title VII. Likewise, Hertz did not allege any facts to show that his report about Rodriguez involved opposing protected activity under Title VII. Accordingly, the sole protected activity Hertz plausibly alleged he engaged in was making his EEOC Charge. Hertz alleged he filed his Charge

with the EEOC on August 5, 2025; thus, any adverse action against Hertz would need to take place after that activity to fulfill the causation requirement.

Hertz alleged Defendants' adverse actions included suspending him without pay (on February 14, 2025), requiring him to sign a Last Chance Agreement (in February 2025), denying him backpay (in or immediately following the events of February 2025), refusing to provide required forms and documents (related to the February 19, 2025 hearing) in a timely manner, and ignoring or dismissing his complaint against Rodriguez (made on August 13, 2025). Compl. ¶ 58. Therefore, only "ignoring or dismissing" Hertz's complaint about Rodriguez came after Hertz filed his EEOC Charge.

However, Hertz failed to allege the subject matter of his complaint about Rodriguez and how a failure on Defendants' part to investigate Rodriguez's behavior would constitute an adverse employment action against Hertz. Accordingly, the undersigned finds that Hertz has failed to plausibly allege retaliation by Defendants and recommends dismissing this claim.

## IV. RECOMMENDATIONS

For the foregoing reasons, the undersigned **RECOMMENDS** the District Judge **GRANT** Keolis's Motion (Dkt. 9) in its entirety and **GRANT IN PART and DENY IN PART** CapMetro's Motion (Dkt. 11). Specifically, the undersigned **RECOMMENDS** that the District Judge **DENY** dismissal of Defendant CapMetro from this suit at this time. The undersigned further **RECOMMENDS** the District Judge **GRANT** Defendant's Motions and **DISMISS WITHOUT PREJUDICE** Hertz's claims for race discrimination, hostile work environment, and retaliation.

To the extent Hertz seeks leave to amend his Complaint, *see* Resp. at 4, the undersigned **GRANTS** such a request because Hertz has not previously amended his Complaint.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Judge of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED June 16, 2026.

MARK LANE
UNITED STATES MAGISTRATE JUDGE